JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Lottie Dawson

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Villari, Lentz & Lynam, LLC
1600 Market Street, Suite 1800
Philadelphia, PA 19103

## DEFENDANTS

County of Residence of First Listed Defendant    Milwaukee
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question *(U.S. Government Not a Party)*
☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☒ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from Another District *(specify)*
☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USCS Section 1332
Brief description of cause:
medical malpractice

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ In excess $150,000 -
CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE 9/30/14
SIGNATURE OF ATTORNEY OF RECORD *[signature]*

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: ___1390 Camp Hill Road, Fort Washington, PA  19034___

Address of Defendant: ___111 West Michegan Street, Milwaukee, WI 53203___

Place of Accident, Incident or Transaction: ___1390 Camp Hill Road, Fort Washington, PA  19034___
(*Use Reverse Side For Additional Space*)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes☐  No☒

Does this case involve multidistrict litigation possibilities?     Yes☐  No☒

RELATED CASE, IF ANY:
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☒
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☒
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☒
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases*:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases*:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☒ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) ___medical malpractice___

ARBITRATION CERTIFICATION
(*Check Appropriate Category*)
I, ___Leonard G. Villari___, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: __9-30-14__    ___Leonard G. Villari___ /s/ Leonard H Villari    __68844__
                          Attorney-at-Law                                Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __9-30-14__    ___Leonard G. Villari___ /s/ Leonard H Villari    __68844__
                          Attorney-at-Law                                Attorney I.D.#

CIV. 609 (5/2012)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Lottie Dawson | : | CIVIL ACTION |
| v. | : | |
| Northern Health Facilities, Inc. et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( x )

| 9-30-14 | Leonard G. Villari | /s/ Leonard G. Villari |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** Plaintiff |
| 215-568-1990 | 215-568-9920 | lgvillari@aol.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

ARBITRATION CERTIFICATION

*(Check appropriate Category)*

I,      Leonard G. Villari, Esquire      , counsel of record do hereby certify:

- Pursuant to Local Civil Rule 53.2, Section 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interests and costs;
- Relief other than monetary damages is sought.

Date:  9/30/2014       _____/s/ Leonard G. Villari_____       _____68844_____
                             Attorney at Law                  Attorney I.D. #

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within care is not related to any case now pending or within one year previously terminated action in this court except as noted above.

Date:  9/0/2014        _____/s/ Leonard M Villari_____       _____68844_____
                             Attorney at Law                  Attorney I.D. #

CIV. 609

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LOTTIE DAWSON<br>1390 Camp Hill Road<br>Fort Washington, PA 19034,<br>  Plaintiff<br>  v.<br><br>NORTHERN HEALTH FACILITIES, INC.<br>d/b/a DRESHER HILL HEALTH AND<br>REHABILITATION CENTER and<br>EXTENDICARE HEALTH FACILITIES, INC.<br>111 W. Michigan Street<br>Milwaukee, WI 53203<br>  and<br>EXTENDICARE HEALTH FACILITIES, INC.<br>d/b/a EXTENDICARE FOUNDATION and<br>DRESHER HILL HEALTH AND<br>REHABILITATION CENTER<br>111 W. Michigan Street<br>Milwaukee, WI 53203,<br><br>  Defendants. | CIVIL ACTION<br><br>NO. |

## CIVIL ACTION COMPLAINT

Plaintiff, Lottie Dawson, by and through her undersigned attorneys, Villari, Lentz & Lynam, LLC, says by way of Complaint against Defendants, as follows:

### I. PARTIES

1.  Plaintiff, Lottie Dawson, is an adult individual, *sui juris*, residing at 1390 Camp Hill Drive, Fort Washington, Pennsylvania 19034.

2.  Plaintiff, Lottie Dawson ("Plaintiff" or "Ms. Dawson"), is a citizen of the Commonwealth of Pennsylvania.

3.  Defendant, Northern Health Facilities, Inc. d/b/a Dresher Hill Health and Rehabilitation Center and Extendicare Health Facilities, Inc. ("NHF"), is a Delaware Corporation

with a principal place of business located at 111 W. Michigan Street, Milwaukee, Wisconsin 53203.

4. At all times material hereto, Defendant NHF regularly conducted business in the Eastern District of Pennsylvania.

5. At all times material hereto, Defendant NHF owned, operated, managed and/or controlled Dresher Hill Health and Rehabilitation Center ("DHHRC") located at 1390 Camp Hill Drive, Fort Washington, Pennsylvania 19034, for the purpose of providing the highest level of care to its patients.

6. At all times material hereto, Defendant NHF acted or failed to act, by and through its agents, ostensible agents, servants, work persons and/or employees, including in particular, but not limited to, the DHHRC nursing staff, who were then and there acting within the scope of their authority in the course of their relationship with said Defendant in furtherance of said Defendant's pecuniary interests.

7. Defendant NHF, as principal, is vicariously or otherwise responsible for the negligent acts or omissions of its agents, ostensible agents, servants, work persons and/or employees.

8. Defendant, Extendicare Health Facilities, Inc. d/b/a Extendicare Foundation and Dresher Hill Health and Rehabilitation Center ("EHF"), is a Delaware Corporation with a principal place of business located at 111 W. Michigan Street, Milwaukee, Wisconsin 53203.

9. At all times material hereto, Defendant EHF regularly conducted business in the Eastern District of Pennsylvania.

10. At all times material hereto, Defendant EHF owned, operated, managed and/or controlled DHHRC, for the purpose of providing the highest level of care to its patients.

11. At all times material hereto, Defendant EHF acted or failed to act, by and through its agents, ostensible agents, servants, work persons and/or employees, including in particular, but not limited to, the DHHRC nursing staff, who were then and there acting within the scope of their authority in the course of their relationship with said Defendant in furtherance of said Defendant's pecuniary interests.

12. Defendant NHF, as principal, is vicariously or otherwise responsible for the negligent acts or omissions of its agents, ostensible agents, servants, work persons and/or employees.

13. None of the above-named Defendants is a citizen of the Commonwealth of Pennsylvania.

## II. JURISDICTION

14. This Court has original jurisdiction under 28 U.S.C.S. § 1332 because the Plaintiff and Defendants are citizens of different states, and because the amount in controversy exceeds $150,000.00.

## III. VENUE

15. Venue is proper under 28 U.S.C.S. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in the Eastern District of Pennsylvania.

## IV. FACTS

16. Ms. Dawson was admitted to DHHRC (hereinafter "Defendants' facility") on May 4, 2011.

17. At the time of her admission, she suffered from early stage dementia, which according to Defendants' records, placed her at increased risk for falls.

18.     At all times material hereto, Ms. Dawson was continent of bowel and bladder and not confined to a wheelchair but ambulated, and performed activities of daily living, independently.

19.     Nonetheless, due to her mild dementia and medication, **Ms. Dawson was a known fall risk, and accordingly, required a "higher level of care"**.

20.     Indeed, Defendants' records are replete with notations of Ms. Dawson's "[i]mpaired balance" and "disturbances of balance, gait positioning ability".

21.     On June 27, 2012, Ms. Dawson was prescribed Seroquel, 12.5 mg (twice daily), for dementia.

22.     On August 9, 2012, she was observed with a bruise to her right forearm; no fall was documented.

23.     Progress notes entered September 13, 2012, at 12:30 p.m. provide that Ms. Dawson was "frequently ambulating throughout facility from 2nd fl[oo]r to 1st floor numerous times throughout this shift."

24.     Progress notes entered on the ensuing shift indicate that Ms. Dawson was "ambulating [with] walker to do laundry + back walking around r[oo]m. Finally in bed by 8 pm."

25.     Conversely, Observation Detail notes for the same period -- September 13, 2012 -- indicate that "no locomotion off unit" occurred.

26.     For some unknown/undocumented reason, on October 17, 2012, Ms. Dawson's **Seroquel prescription was <u>doubled</u> to 25 mg (twice daily) and her Zoloft prescription was <u>doubled</u> to 50 mg**.

4

27.     Three days later on October 20, 2012 -- and again for some unknown/ undocumented reason -- **Ms. Dawson was prescribed Neurontin 100 mg for the first time** without her or her family's knowledge or permission.

28.     On October 23, 2012, Ms. Dawson called her daughter, Brenda Brandon ("Mrs. Brandon"), who was not home at the time; she spoke with Mrs. Brandon's husband, and told him that she "didn't fell well all over".

29.     Upon receiving her mother's message, Mrs. Brandon called the facility and was informed by a woman named "Claire" that Ms. Dawson recently had been prescribed Neurontin.

30.     Mrs. Brandon was taken aback by this news because, as Power of Attorney over Ms. Dawson, she was supposed to be informed of any changes in medication.

31.     Mrs. Brandon instructed Claire not to give Ms. Dawson any more Neurontin.

32.     On the following morning, October 24, 2012, Mrs. Brandon went to Defendants' facility to visit her mother, whom she found thoroughly disoriented and incoherent; Ms. Dawson's face was "inches" away from a plate of food, which she was just staring at "as if she were drunk".

33.     Mrs. Brandon tried to speak her mother -- who, it must be noted, weighs scarcely more than 90 pounds -- but her mother just "babbled" like she was "speaking in tongues".

34.     Mrs. Brandon summoned the Director of Nursing, a man named "Ted", who said "It's obvious she's been administered too much medication."

35.     Ted stated that he would have Ms. Dawson's vitals checked; meanwhile, Mrs. Brandon got her mother into her bed to get some rest.

36. After a while, Mrs. Brandon went to give her mother a kiss goodbye, and Ms. Dawson screamed! Ms. Dawson then moved her hair back and showed Mrs. Brandon a huge hematoma on top of her forehead/scalp.

37. Ms. Dawson was transported to Abington Memorial Hospital's Emergency Department, where she was diagnosed with a **level 3 head trauma with multiple hematomas to her left face, forehead and shoulder, secondary to unmonitored fall**.

38. The hospital records repeatedly note that these injuries occurred in the wake of an acute increase in dosage of Seroquel and Zoloft, in addition to the administration of Neurontin.

39. Accordingly, the hospital's plan of care was to "hold Zoloft, Seroquel, Neurontin and monitor for M[ental] S[tatus]."

40. Ms. Dawson spent the next six (6) days in the hospital, until she was discharged on October 29, 2012.

41. The above-referenced incidents were in no manner caused by any act or failure to act on the part of Plaintiff.

42. The above-referenced incidents were directly and proximately caused by the negligence and carelessness of Defendants.

## COUNT I – NEGLIGENCE
## PLAINTIFF, LOTTIE DAWSON v. ALL DEFENDANTS

43. Plaintiff, Lottie Dawson, hereby incorporates the averments set forth in paragraphs 1-42, *supra*, as though fully set forth herein at length.

44. The aforementioned incidents were caused by the negligent and careless conduct of Defendants, acting by and through their employees, servants, agents, ostensible agents and work persons, and consisted, *inter alia*, of the following:

a. Failure to monitor Plaintiff, an already-known fall risk, after doubling her psychotropic medications, in addition to prescribing/administering 100 mg of Neurontin for the first time;

b. Failure to restrain Plaintiff, an already-known fall risk who was manifestly incoherent and in distress from the acute increase of psychotropic medications, until she became stable enough to walk without assistance;

c. Failure to provide ambulatory aids, including but not limited to a wheelchair, after doubling Plaintiff's psychotic medications, in addition to prescribing/administering 100 mg of Neurontin for the first time;

d. Failure to raise bed rails;

e. Failure to provide Plaintiff with bed and/or chair alarms to alert nursing staff of unassisted ambulation, after doubling and administering new/additional psychotropic medications;

f. Failure to recognize a patient in distress;

g. Failure to notify, let alone consult with, Plaintiff's family members, including but not limited to her Power of Attorney, Brenda Brandon, regarding changes in Plaintiff's medications;

h. Failure to evaluate and treat their patient, who was debilitated and in distress and urgent need of medical attention at Defendants' facility following the acute increase of her psychotropic medications;

i. Failure to provide any medical treatment to their patient, who was debilitated and in distress and urgent need of medical attention at Defendants' facility following the acute increase of her psychotropic medications;

j. Failure to summon, much less immediately summon, emergency medical services for Plaintiff, who was debilitated and in distress and urgent need of medical attention following the acute increase of her psychotropic medications;

k. Abandonment of Lottie Dawson by leaving her unattended, when she was debilitated, in distress and in urgent need of medical attention following the acute increase of her psychotropic medications;

l. Failure to provide personal or physical assistance to Plaintiff, who was debilitated and in distress and urgent need of medical attention following the acute increase of psychotropic medications;

7

    m.    Failure to properly monitor the medications and dosages prescribed and administered to Plaintiff, as well as the interactions between said medications;

    n.    Failure to render reasonable medical care by failing to properly supervise medical personnel assisting in the provision of medical care to Plaintiff;

    o.    Failure to appropriately order repeat Pro Time INR tests;

    p.    Failure to correctly monitor and alter Plaintiff's dosage of blood-thinning agents; and

    q.    Failure to request appropriate consultations.

45. As a direct and proximate result of the negligence and carelessness of Defendants, Ms. Dawson suffered numerous painful, permanent and debilitating personal injuries, including, *inter alia*, the following: level 3 head trauma; multiple hematomas to her left face, forehead and shoulder, concussion; irreversible brain damage; nerve damage; muscle spasms; weakness; stiffness; difficulty ambulating; gait dysfunction; difficulty falling asleep; interrupted sleep; and aggravation and/or exacerbation of all known and unknown pre-existing medical conditions. Ms. Dawson also suffered severe aches, pains, mental anxiety, anguish, humiliation, and a severe shock to her entire nervous system and other injuries, the full extent of which is not yet known.

46. As a direct and proximate result of the negligence and carelessness of Defendants, Ms. Dawson has suffered, and may in the future suffer, an inability to perform her usual and daily duties, labors, occupations and avocations.

47. As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff has been, and may in the future be, required to expend various and diverse sums of money in an effort to cure her injuries.

48. As a direct and proximate result of the negligence and carelessness of Defendants, Ms. Dawson has been, and may in the future be, required to undergo significant medical care,

evaluation, therapy, treatment, costly medications and invasive and painful medical procedures and surgeries in an effort to cure her injuries.

49. Defendants' failure to exercise reasonable care as alleged above comprised outrageous conduct under the circumstances, manifesting a wanton and reckless disregard of the rights of Plaintiff.

WHEREFORE, Plaintiff, Lottie Dawson, demands judgment in her favor and against Defendants, for special and compensatory damages in an amount in excess of One Hundred and Fifty-Thousand Dollars ($150,000.00), plus punitive damages, the statutory rate of interest, costs and related expenses, and such other just and equitable relief as this Honorable Court deems proper.

## V. JURY DEMAND

Plaintiff hereby demands a trial by jury as the above Count against Defendants.

VILLARI, LENTZ & LYNAM, LLC

Date: 09/30/14    By: /s/ LGV7043
Leonard G. Villari, Esquire
Thomas A. Lynam, III, Esquire
I.D. Nos. 68844/83817
1600 Market Street, Suite 1800
Philadelphia, PA 19103
(215) 568-1990 (t)
(215) 568-9920 (f)
lgvillari@aol.com/ tlynam@vll-law.com
*Attorneys for Plaintiff,*
*Lottie Dawson*